J-S31027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RONALD WALKER | : | |
| Appellant | : | No. 712 EDA 2017 |

Appeal from the Judgment of Sentence September 15, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012167-2014,
CP-51-CR-0013498-2014, CP-51-CR-0013501-2014,
CP-51-CR-0013502-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 23, 2018**

Ronald Walker appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of burglary, aggravated assault, involuntary deviate sexual intercourse ("IDSI"), and related offenses.[1]

> The evidence at trial established that complainant . . . and [Walker] had been in a relationship for approximately six [] months in 2014 after having met at [the victim's] [d]aycare [c]enter where [Walker's] children attended.  After living together for a while, [the victim] ended the relationship.  On August 10, 2014, a week after [Walker] moved out, he returned to [the victims'] home brandishing a gun and awakened [the victim.] . . .

---

[1] The jury convicted Walker of burglary, 18 Pa.C.S.A. § 3502; aggravated assault, 18 Pa.C.S.A. § 2702; IDSI, 18 Pa.C.S.A. § 3123(a)(1); intimidation of a witness, 18 Pa.C.S.A. § 4952; retaliation against a witness, 18 Pa.C.S.A. § 4953; arson, 18 Pa.C.S.A. § 3301; and criminal mischief, 18 Pa.C.S.A. § 3304.

[Walker,] who was initially wearing a mask and gloves . . . continuously punched [the victim] in the head and stomach, interrogated [the victim] about messages on [the victim's] phone, and forced [the victim] to perform oral sex on him. The violent physical and sexual assault went on for hours, culminating with [Walker] transporting [the victim] to his home where [the victim] begged to receive medical attention. Finally [Walker] drove [the victim] to the hospital, but gave an implied threat that [the victim's] family would be harmed if [the victim] did not fabricate a story that [the victim] was jumped by a group of [women]. At the hospital, [Walker] posed as the [victim's] fiancé[] [and] remained nearby as [the victim] was treated. The [victim's] injuries were so severe that [the victim] remained heavily medicated for several days. [Walker] remained close throughout the [victim's] hospitalization, drove [the victim] home when discharged and remained and cared for [the victim's] children while [the victim] recuperated. Fearing for [one's] life and that of [one's own] family, [the victim] did not disclose the incident to anyone.

As [the victim] recovered and returned to work, [Walker's] behavior, once again, became increasingly abusive and threatening. Finally, [the victim] decided to tell [immediate] family about the August [10, 2014] incident; and, ultimately, [Walker's] barrage of harassment and threats compelled [the victim] to contact the police on August 29, 2014. Following the report to the police, [the victim] attempted to serve [Walker] with a Protection from Abuse [("PFA")] [o]rder, but he refused to meet [the victim]. A few days later [the victim] learned that [the victim's] [d]aycare [c]enter had been burglarized and items stolen and another center that [the victim] was in the process of renovating had been set on fire. [The victim] also learned that an attempt had been made to attack [the victim's] brother and that [the victim's] [d]aycare van had been stolen. Afraid for [one's] life[,] [the victim] took [the victim's] mother and children to a hotel in New Jersey. [Walker] continued to try to contact [the victim], who ultimately, out of fear[,] agreed to meet with him. During the meeting, [Walker] admitted to the damages to [the victim's] businesses and the attack on [the victim's] family member. Despite [the victim's] fears, [the victim] agreed to move back into [Walker's] home in the hope that [the victim's] family would be spared further attacks. While there, [the victim] was constantly reminded by [Walker] that [the victim] was not to tell anyone about his beating [the victim] up, destroying [the victim's]

businesses or attacking [the victim's] brother. [The victim] remained with [Walker] for several weeks until he was arrested for the August [10, 2014] [assault]. After [Walker] was arrested, [the victim] [arranged] to move out of [Philadelphia] to an undisclosed location.

The trial evidence included a surveillance camera video showing [Walker] in the vicinity of [the victim's] [d]aycare [c]enter at the time of the fire. [Pennsylvania Rule of Evidence] 404(b) evidence of [Walker's] prior abuse against women he had relationships with was also admitted.[2] Detectives and police officers testified to their investigations into the incidents which occurred on September 3, 2014 at the Prestige Daycare Center, 4907 N. 5th Street in Philadelphia (vandalism and theft); at 5060 Copley Road in Philadelphia (shattered window and spent cartridge casings); and at 1509-1511 Wadsworth Avenue in Philadelphia (fires set in six (6) different locations and heavy smell of gasoline).

[The victim's] assistant . . . testified that on September 3, 2014, [the assistant] noticed that the Dodge van [the assistant] used for [the assistant's] job at the [d]aycare [c]enter was missing from [the assistant's] back driveway. Inside the van[,] among other things[,] was a bag that contained [a familial child's] uniforms. Sometime thereafter, [Walker] contacted [the assistant] and arranged to meet . . . near the [d]aycare [c]enter. At the time[, Walker] gave [the assistant] the bag with [the child's] uniforms. The van was recovered later parked on the street.

[Walker] testified and denied all of the accusations against him. He testified that he had no idea why [the victim], [the victim's] brother and the [d]aycare assistant would testify and implicate him the way they did. He also presented his mother, daughter and son who all stated, after viewing the surveillance video, that they could not recognize the man in the video who was seen in the back of the [d]aycare the night of the fire.

Trial Court Opinion, 6/25/17, 2-5 (citations to record omitted).

---

[2] The trial court admitted evidence of two domestic violence incidents at Walker's trial. In the first, Walker assaulted a former partner, D.P., after accusing D.P. of infidelity. In the second, Walker assaulted another former partner, S.W., during an argument about alleged infidelities.

On April 15, 2015, a jury convicted Walker of the above offenses. On September 15, 2015, the trial court sentenced Walker to an aggregate term of 36 to 90 years' incarceration. On September 26, 2015, Walker filed a timely motion for reconsideration of sentence. The trial court denied Walker's motion by operation of law on January 30, 2017. On February 13, 2017, Walker filed a timely notice of appeal. Both Walker and the trial court have complied with Pa.R.A.P. 1925. On appeal, Walker raises the following issues for our review:

1. Was there sufficient evidence to sustain Walker's convictions?

2. Did the trial court abuse its discretion when it denied Walker's motion for a new trial based on the weight of the evidence, grounded in the credibility of witnesses?

3. Did the trial court abuse its discretion when it admitted evidence of conduct of which Walker was previously acquitted?

4. Was the Commonwealth's arrest warrant valid?

5. Was trial counsel ineffective for failing to present exculpatory evidence and/or failing to object to prior bad act evidence?

6. Did the trial court err in allowing the Commonwealth to call Walker a liar in its closing argument?

7. Was Pa.R.Crim.P. 704 violated by good cause delays in sentencing?

8. Did the trial court abuse its discretion by considering facts of record and imposing consecutive sentences?

9. Did the trial court err in imposing a sentence mandating Walker register as a sexual predator without a hearing?

Brief of Appellant, at 4-5 (reworded for clarity and brevity).[3]

Walker first claims that the evidence is insufficient to sustain his convictions for aggravated assault, arson, burglary, PIC, IDSI, intimidation of witness, and retaliation against witness.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. **The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.** Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa. Super. 2011) (emphasis added) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

Walker maintains that he is completely innocent, and argues that the "Commonwealth failed to establish every essential element of the offenses

---

[3] On July 30, 2018, Walker, proceeding *pro se*, filed an addendum to his brief, which this court received and considered in coming to its decision.

charged[.]" Brief of Appellant, at 18. Walker's various offenses arise from the same factual nexus as one another, and thus, we address them together.

A person is guilty of aggravated assault where they "attempt[] to cause serious bodily injury to another, or cause[] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or a protracted loss or impairment of the functions of any bodily member or organ." 18 Pa.C.S.A. § 2301.

In order to be convicted of IDSI, a defendant must "engage in deviate sexual intercourse with a complainant . . . by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S.A. § 3101. The definition of deviate sexual intercourse includes oral intercourse. **Commonwealth v. Kelley**, 801 A.2d 551, 556 (Pa. 2002). Forcible compulsion is "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. 18 Pa.C.S.A. § 3101. "[I]n a prosecution for sex offenses, a guilty verdict may rest on the uncorroborated testimony of ." **Commonwealth v. Owens**, 649 A.2d 129, 133 (Pa. Super. 1994) (citing 18 Pa.C.S.A. § 3106).

A person is guilty of PIC if he "possesses any instrument of crime with the intent to employ it criminally." 18 Pa.C.S.A. § 907(a). A gun qualifies as an instrument of crime when used to commit an assault. **See Commonwealth v. Mack**, 850 A.2d 690, 692-93 (Pa. Super. 2004).

- 6 -

"To sustain a burglary conviction, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises with the contemporaneous intent of committing a crime therein, at a time when he or she was not licensed or privileged to enter." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1078 (Pa. Super. 2017) (quotation marks and citation omitted). The intent to commit a crime "need not be directly proved, but may be inferred from the circumstances surrounding the incident[.]" ***Commonwealth v. Hardcastle***, 546 A.2d 1101, 1109 (Pa. 1988).

A person is guilty of arson endangering property where "he intentionally starts a fire or causes an explosion, whether on his own property or that of another . . . with the intent of destroying or damaging a building or unoccupied structure of another[.]" 18 Pa.C.S.A. § 3301(c)(1).

A person is guilty of intimidation of witnesses or victims

> if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any victim or witness to . . . refrain from informing or reporting to any law enforcement officer . . . any information relating to the commission of a crime.

18 Pa.C.S.A. § 4952(1). Relatedly, a person is guilty of retaliation against a witness or victim if "he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness[.]" 18 Pa.C.S.A. § 4953(a).

On August 10, 2014, Walker, without permission, entered the victim's home. Walker, who was wearing a ski mask and gloves, brandished a pistol, which he pointed at the victim's head. Walker removed his ski mask, and interrogated the victim about whether the victim had slept with a repair person with whom the victim had contracted. The victim denied the allegations, to no avail; for approximately seven hours, Walker beat various areas of the victim's body and face with his pistol. Following the assault, the victim experienced side effects symptomatic of a concussion and suffered internal bleeding, spleen lacerations, substantial bruising, and ruptured blood vessels. At the time of trial, the victim had not fully recovered from the injuries inflicted by Walker. At some point during the time Walker was present in the victim's home, he forced the victim to perform oral sex on him. The victim complied with Walker's demand to perform oral sex because he threatened the victim with his pistol. Walker argues that there is no evidence to corroborate the victim's testimony with regard to IDSI, but the victim's testimony alone is sufficient to sustain Walker's conviction for IDSI. **Owens**, **supra**.

Before Walker brought the victim to the hospital, the victim noticed duct tape in a bag Walker had brought with him. The presence of gloves, a black mask, duct tape and a firearm is sufficient for the jury to conclude that Walker had already formed the intent to assault the victim physically and sexually prior to entering the home. **See Commonwealth v. Simpson**, 462 A.2d

821, 823-25 (Pa. Super. 1983) (sustaining burglary conviction where defendant approached victim's bed and threatened her with weapon).

On September 2, 2014, the victim reported the August 10, 2014 incident to police. The next day, Walker burglarized two daycare centers owned and operated by the victim. The Wadsworth daycare center sustained fire damage and the Fifth Street daycare center sustained damage from vandalism. On the charges of burglary, the jury considered the following: (1) video of Walker walking towards a vehicle parked adjacent to the Wadsworth Street Daycare Center; (2) video of Walker in possession of artwork taken from the Wadsworth Street Daycare Center office; (3) the proximity of the Wadsworth Street Daycare Center to the Fifth Street Daycare Center; (4) the victim's identification of Walker from the aforementioned video footage; and (5) the time proximity of the burglaries to the victim's police report. Additionally, the victim testified that Walker admitted that he burglarized the Fifth Street Daycare Center and vandalized existing structures within. Walker also admitted to the victim that he set the Wadsworth Street Daycare Center ablaze. The fire damage proved catastrophic – following the fire, the victim never opened the daycare center for business.[4]

---

[4] Walker baldly asserts, without citation to the record, that the Commonwealth argued he committed arson with a person present, 18 Pa.C.S.A. § 3301(a)(1). The record belies Walker's argument. The jury instructions and Walker's sentencing hearing transcripts inconvertibly show the trial court instructed the jury and the jury convicted Walker of arson under section 3301(c)(1), not section 3301(a)(1).

Walker also challenges his four convictions of intimidation of a witness and three convictions of retaliation against a witness. Specifically, Walker contends that because he did not commit the acts underlying the intimidation and retaliation charges, a jury cannot find him guilty of the derivative offenses. Additionally, he argues that because the jury acquitted him of the predicate offenses stemming from a drive-by-shooting of the victim's brother's home, he is innocent of attempting to retaliate or intimidate the victim and the victim's family. Walker's argument is without avail. The evidence was sufficient to sustain all of the foregoing convictions.

Testimony established that when Walker was taking the victim to the hospital following the August 10, 2014 assault, he stated that if the victim revealed that he committed an assault, he knew where the victim's family lived. He also instructed the victim to lie about the cause of the injuries. Furthermore, the same day Walker perpetrated the two burglaries and arson, he orchestrated a drive-by-shooting on the victim's brother's residence. Walker later confessed to the victim that he was responsible for the shooting. Walker's burglaries and his orchestration of a drive-by-shooting were consistent with prior threats he made to dissuade the victim from reporting the August 10, 2014 assault to police. In light of the circumstances, it was reasonable for the jury to conclude Walker's prior threats were credible. Furthermore, Walker's acquittal on the charge of discharging a firearm into an occupied structure, 18 Pa.C.S.A. § 2707.1, does not preclude a conviction for retaliation against a witness; the Commonwealth was not required to prove

the elements of section 2707.1 to prove he retaliated against the victim.  ***See***

***Commonwealth v. Miller***, 35 A.3d 1206, 1212-13 (Pa. 2012) (acquittal of

predicate offense does not preclude conviction for crime that does not require

commission of predicate offense as element of crime).   Moreover, the

aforementioned time proximity of the burglaries and arson to the victim's

report to police indicate the offenses were retaliatory.  In light of the forgoing,

Walker's claims that the evidence was insufficient to sustain his convictions

on all charges warrants no relief.

Walker next claims that his convictions were against the weight of the

evidence.  Specifically, Walker challenges the credibility of several witnesses

and points to various discrepancies between evidence introduced at trial by

the Commonwealth and evidence not of record.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court.  Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence.  It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice.  In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (quotation

marks and citations omitted).

Walker first argues that fatal discrepancies exist between evidence introduced at trial and both grand jury testimony and statements made to detectives. However, weight of the evidence claims concern only evidence presented to the fact-finder, and thus, a trial court's failure to consider evidence not of record (i.e., grand jury testimony, statements to detectives) does not constitute an abuse of discretion. *See Rozanc v. Urbany*, 664 A.2d 619, 622 (Pa. Super. 1995) (appellant's request for new trial should be granted based upon evidence offered at trial).

Walker's remaining weight claims all relate to the credibility of witnesses, primarily the victim. The jury is the "sole arbiter of the credibility of . . . witnesses." *Commonwealth v. Jacoby*, 170 A.3d 1065 (Pa. 2017). Witness credibility includes "questions of inconsistent testimony and improper motive." *Id.* (citation omitted). "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* (citation omitted).

Here, the jury believed the victim's testimony; this was not shocking. It was within the purview of the jury to conclude that any former inconsistent statements (e.g., the statement to medical professionals that the victim sustained the injuries because the victim was 'jumped' by a group of women) were the result of Walker's intimidation and/or undue influence. Therefore, we find no abuse of discretion in the trial court's denial of Walker's post-sentence motion challenging the weight of the evidence.

Walker next claims that admission into evidence of his prior acquitted misconduct was improper, arguing: (1) that admission of the evidence with respect to his assault of a minor violated the prohibition on double jeopardy; and (2) that the trial court improperly admitted prior bad act evidence under Pa.R.E. 404(b).

> The standard or review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (quoting *Commonwealth v. Bishop*, 936 A2d 1136, 1143 (Pa. Super. 2007) (citation omitted)).

First, Walker contends that the admission of prior bad act evidence violated the prohibition on double jeopardy because a jury previously acquitted him of criminal charges stemming from the misconduct proffered by the Commonwealth as prior bad act evidence. However, "[a]n acquittal in a criminal case does not preclude the [Commonwealth] from re-litigating [an] issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling v. United States*, 493 U.S. 342, 349 (1990).

Instantly, Walker filed a motion *in limine* to preclude the Commonwealth from proffering prior bad act evidence pursuant to Rule 404(b). "[W]here a

motion to suppress has been filed, the burden is on the Commonwealth to establish by *a preponderance of the evidence* that the challenged evidence is admissible." *Commonwealth v. DeWitt*, 608 A.2d 1030, 1031 (Pa. 1992) (emphasis added). Here, the court needed only find that Walker committed the prior crime by a preponderance of the evidence, not beyond a reasonable doubt. Therefore, the Commonwealth's proffer of such evidence did not violate the double jeopardy clause.

Second, Walker avers that the trial court improperly admitted evidence of prior bad acts, i.e., assault charges stemming from domestic incidents, under Rule 404(b).

Instantly, the Commonwealth argues that Walker's Rule 1925(b) statement was overly vague, and thus he failed to preserve his Rule 404(b) claim in his Pa.R.A.P. 1925(b) statement. In support of its position, the Commonwealth cites *Commonwealth v. Lemon*, 804 A.2d 34, 38 (Pa. Super. 2002) (finding defendant waived certain claims because he "made only a very general and vague 1925(b) statement . . . without discussing the specific reasons [he] raised in his brief."). Walker's Rule 1925(b) statement states, in relevant part, as follows:

> The testimony of two female witnesses who were involved in prior incidents with [Walker] was highly prejudicial and should have been barred by the trial court.

Rule 1925(b) Statement, 3/10/17. Handwritten next to this sentence is "404(b)." Here, the trial court addressed, to the best of its ability, the merits of Walker's claim – however, the trial court's decision to do so does not

- 14 -

constrain us to address Walker's overly vague issue. ***See 202 Island Car Wash, L.P. v. Monridge Const., Inc.***, 913 A.2d 922, 925 (Pa. Super. 2006) (when appellant fails to identify, in vague statement of matters complained of, specific issue appellant wants to raise on appeal, issue is waived, even if trial court guesses correctly and addresses issue in opinion in support of order); ***see Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa. Super. 2002) (concise statement of matters complained of on appeal, which is too vague to allow court to identify issues raised on appeal, is functional equivalent to no concise statement at all; even if trial court correctly guesses issues appellant raises on appeal and writes opinion pursuant to that supposition, issue is still waived). Accordingly, we find Walker's Rule 404(b) issue waived.[5] ***Lemon***, ***supra***.

In Walker's fourth claim on appeal, he avers that no probable cause existed to support his arrest, and thus, the trial court must vacate his convictions. This claim is moot – any possible defect in his arrest warrant was

---

[5] Even if Walker had not waived this issue, he is entitled to no relief. Evidence of prior bad acts is admissible if it is "offered for a valid purpose such a proving the existence of a common scheme[.]" ***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa. 2014). A common scheme exists "where there is a striking similarity – or logical connection – between the proffered prior bad acts and the underlying charged crime." ***Commonwealth v. Hicks***, 156 A.3d 1114, 1125 (Pa. 2017). "'Sufficient commonality factors' between the other incident and the underlying crime 'dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator.'" ***Id.*** (citation omitted). The prior bad act evidence introduced in the Commonwealth's case are admissible.

cured by his conviction based upon evidence that established guilt beyond a reasonable doubt. *See Commonwealth v. Krall*, 304 A.2d 488, 490 (Pa. 1973). Once the trial court entered Walker's verdict, his challenge to the arrest warrant became moot. *Commonwealth v. Owens*, 649 A.2d 129, 135 (Pa. Super. 1994).

Walker next avers that the Commonwealth's prosecutorial misconduct merits a mistrial.

Our Supreme Court has defined prosecutorial misconduct as follows:

> The phrase "prosecutorial misconduct" has been so abused as to lose any particular meaning. The claim either sounds in a specific constitutional provision that the prosecutor allegedly violated or, more frequently, like most trial issues, it implicates the narrow review available under Fourteenth Amendment due process. *See Greer v. Miller*, 483 U.S. 756, 765[](1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.") (internal quotation marks omitted); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643[](1974) ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them."). However, "[t]he Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Mabry v. Johnson*, 467 U.S. 504, 511[](1984). The touchstone is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219[](1982).

*Commonwealth v. Cox*, 983 A.2d 666, 685 (Pa. 2009).

Here, Walker alleges that the Commonwealth committed misconduct in three ways: (1) by characterizing three text messages used to impeach him as coming from a forensic report; (2) by expressing personal views about his veracity at closing argument; and (3) by introducing pictures of the victim's

basement. However, Walker has waived all three of these claims by failing to make a contemporaneous objection to these alleged misconducts at trial. Pa.R.A.P. 302(a); *see Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008) (finding prosecutorial misconduct claims waived by counsel's failure to contemporaneously object at trial).[6]

Walker next argues that counsel was ineffective. Absent certain specific circumstances, claims of ineffective assistance of counsel are to be deferred to Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546, review. *Commonwealth v. Holmes*, 79 A.3d 562, 577 (Pa. 2013). Therefore, trial courts should not entertain claims of ineffectiveness upon post-verdict motions and such claims should not be reviewed upon direct appeal. *Id.* An exception exists to the general rule requiring a defendant to wait until collateral review to raise claims of ineffective assistance of trial counsel, so as to permit raising of such claims on direct appeal, when claims have been raised and fully developed at a hearing in trial court. *Commonwealth v. Bomar*, 826 A.2d 831, 855 (Pa. 2003).

Here, Walker has failed to invoke an exception meriting review of his ineffective assistance of trial counsel claim on direct appeal. Moreover, Walker has not presented this issue to the trial court, and thus, this issue has not been fully developed at a hearing or otherwise. Accordingly, we are

---

[6] In any event, Walker does not forward any cogent argument as to why the Commonwealth's actions and/or trial strategy constitutes prosecutorial misconduct.

constrained to conclude that Walker's issue is not yet ripe, and that he must defer this claim for collateral review. ***Holmes***, ***supra***.

In Walker's seventh claim, he argues the considerable delay between his conviction and sentencing prejudiced his due process rights.

> To determine whether a defendant's speedy trial or due process rights were violated, the trial court should consider: (1) the length of the delay falling outside of the 60-day-and-good-cause provisions for incarceration without sentence; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

***Commonwealth v. Still***, 783 A.2d 829, 832 (Pa. Super. 2011) (quoting ***Commonwealth v. Anders***, 699 A.2d 1258, 1264 (Pa. Super. 1997) (citation omitted) (abrogated on different grounds)).

Here, the trial court thoroughly explained the reasons for each continuance, the majority of which were due to either preparation of Walker's defense or case congestion:

> [Walker] was [] sentenced 519 days after conviction[.] . . . On July 27, 2015, [Walker's] sentencing was continued and the record is silence as to the reason. However, it is presumed the continuance was necessary to obtain a Megan's Law Assessment which usually takes [90] to [130] days to complete. [The trial court] was on trial on September 18, 2015, and could not reach the matter so it was continued once again. On November 20, 2015, sentence was continued because [defense] counsel was on trial and unavailable. The timely Sentencing Rule was waived. On February 12, 2016, sentencing was continued because the Commonwealth's doctor was not available and counsel was

- 18 -

permitted to withdraw. The withdrawal of counsel is particularly important because it was caused by [Walker]. Threats made by [Walker] to his counsel included a threat to sue civilly, improper representation, intentionally undermining his case to secure a guilty verdict and colluding with the prosecutor to have him convicted. New counsel was ordered and appointed and the Timeliness Rule was waived. A March 3, 2016 listing resulted in a continuance since this court was not sitting on that date. Then on June 10, 2016, the matter was continued because new counsel was unavailable. Once again, the Timeliness Rule was waived. Finally, on August 26, 2016, [] sentencing was continued due to this court being on trial. [Walker] was sentenced on September 15, 2016.

Trial Court Opinion, 6/25/17, at 10-11. The trial court aptly detailed the reasons for delays in sentencing extending beyond the 60-days-and-good-cause provisions for incarceration without sentence. Furthermore, Walker has forwarded no colorable argument that the delay prejudiced his defense and we do not discern from the circumstances that any such prejudice exists. Therefore, he is entitled to no relief. **Still**, **supra**.

In Walker's next claim on appeal, he challenges the discretionary aspects of his sentence. Specifically, Walker argues the trial court relied on impermissible sentencing factors and that it improperly imposed consecutive sentences. Our standard of review regarding claims of the discretionary aspects of sentence is well settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

- 19 -

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

The right to appeal the discretionary aspects of a sentence is not absolute. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004). To determine if this Court may review the discretionary aspects of a sentence, we employ a four-part test:

> (1) [W]hether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify [the] sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (internal citations omitted).

Here, Walker filed a timely notice of appeal, and preserved his issues in a motion for reconsideration of sentence. Further, Walker's brief includes a statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Accordingly, we now determine whether Walker has raised a substantial question for review and, if so, proceed to a discussion of the merits of the claim. *See* Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa.1987).

"A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the [Sentencing] [C]ode or is contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v.*

*Christine*, 78 A.3d 1, 10 (Pa. Super. 2013) (internal citations omitted); *see also* 42 Pa.C.S.A. § 9781(b). "We determine whether a particular case raises a substantial question on a case-by-case basis." *Id.* A bald or generic assertion that a sentence is excessive does not raise, by itself, a substantial question justifying this Court's review of the merits of the underlying claim. *Id.*; *see also Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013).

Walker first avers his sentences are unreasonable because the trial court imposed them consecutively. Under 42 Pa.C.S.A. § 9721, the sentencing court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa. Super. 2006). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question only in the most extreme circumstance, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of the imprisonment." *Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (citation omitted). Furthermore, "[t]here is no question that the trial judge may, at [its] discretion, impose consecutive sentences for multiple convictions."

Walker argues that his sentence amounts to a life term and that the multiple sentences all stem from a single scenario. His first argument is without avail. Simply put, this is not a case where the trial court's exercise of discretion resulted in a sentence that is grossly disparate to Walker's conduct

- 21 -

or that "viscerally appear[s] [to be] patently unreasonable." *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, (Pa. Super. 2010). The latter argument is untrue – Walker's crimes stem from four distinct incidents. Accordingly, we conclude that Walker fails to raise a substantial question with respect to his excessiveness claim premised on the imposition of consecutive sentences.

Walker also argues that the sentencing court relied on impermissible sentencing factors. When fashioning a sentence, the sentencing court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The sentencing court may consider the defendant's misconduct associated with his crimes, even if it did not convict him of the crime itself. *See e.g. Commonwealth v. Ali*, 149 A.3d 29, 39 (Pa. 2016). Additionally, where the trial court has the benefit of a pre-sentence investigation ("PSI") report, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Walker fails to raise a substantial question that the sentencing court used impermissible considerations. Although Walker's jury acquitted him of discharging a firearm into an occupied structure, it still convicted him of

several charges arising from the same incident. The record supports the court's determination that Walker shot at victim's brother's house, and that the brother's young child was at home at the time. Attempting to intimidate victim's family with a firearm, while a child was in the house, substantially relates to the gravity of the offense and to the impact on the victim and the community, and thus this consideration was proper, particularly in light of the fact that the sentencing court also had the benefit of a PSI.

Lastly, Walker avers that the trial court erred in designating him a sexual predator at sentencing without a hearing. Contrary to Walker's claim, the trial court, in fact, did not designate Walker a sexual predator. Therefore, this claim is moot.[7]

Judgment of sentence affirmed. Motion for extraordinary relief denied.[8]

_____

[7] The trial court did not require Walker to register as a sexually violent predator ("SVP"); at sentencing, the Commonwealth withdrew its request for a hearing to determine if Walker was a SVP. N.T. Sentencing, 9/15/16, at 4. The trial court, however, did designate Walker a Tier III offender under the Sexual Offender and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10-9799.41, thus, subjecting him to a lifetime registration requirement pursuant to SORNA. N.T. Sentencing, 9/15/16, at 46-47. However, Walker did not challenge his designation as a Tier III offender in his Rule 1925(b) statement or brief, and thus, he has waived any claim challenging his lifetime registration requirement on appeal. *Commonwealth v. McMullen*, 745 A.2d 683, 689 (Pa. Super. 2000) (finding issues waived where appellant failed to develop any argument for the claims and noting that meaningful appellate review is impossible in such a situation).

[8] Walker filed a motion for extraordinary relief requesting discovery of documents relating to four separate arrest warrants in this case. However, as

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/18

---

the issues relating to said arrest warrants are moot, we deny his motion. *See* Memorandum, at 15.

Additionally, Walker has filed a motion for writ of mandamus, in which he asks the lower court to provide him with what he characterizes as a "forensic text analysis report." Walker alleges that the "forensic text analysis report" may contain exculpatory evidence that the Commonwealth withheld from the defense. Walker premises his theory that such a report would reveal the existence of exculpatory evidence on his mistaken belief that his arrest warrant was deficient/illegal. However, as previously stated, any issues relating to his arrest warrant are moot. Additionally, in Walker's writ of mandamus, he also apparently asks the lower court to provide the grand jury indictment presentment testimony of the victim and the two investigating detectives. As far as this Court can discern, Walker believes the Commonwealth failed to prove by a preponderance of the evidence that he was culpable for the aforementioned crimes. However, a jury convicted Walker of all the aforementioned crimes, and thus, this motion is moot. Accordingly, we hereby deny Walker's petition for writ of mandamus.